COMMONWEALTH *vs.* RALPH PIERRE.

No. 07-P-901.

Hampden. March 11, 2008. - July 17, 2008.

Present: LENK, GELINAS, & FECTEAU, JJ.

*Motor Vehicle,* Operating under the influence. *Evidence,* Breathalyzer test.

This court concluded that 501 Code Mass. Regs. § 2.55, which states that a
   breathalyzer operator "should" conduct a fifteen-minute pretest observa-
   tion of an individual arrested for operation of a motor vehicle while under
   the influence of intoxicating liquor, does not preclude observation of an ar-
   restee by the breathalyzer operator outside the testing location. [232]
A trial court judge did not err in allowing a criminal defendant's motion to
   suppress the results of a breathalyzer test, where the poorly developed rec-
   ord showed substantial deviation from compliance with the approved
   methods for conducting breathalyzer tests promulgated pursuant to G. L.
   c. 90, § 24K, including, most critically, a lack of testimony from the of-
   ficer conducting the test concerning how he performed the required fifteen-
   minute pretest observation of the defendant, or what he observed during
   that time. [232-235]

COMPLAINT received and sworn to in the Springfield Division
of the District Court Department on January 17, 2006.

A pretrial motion to suppress evidence was heard by *Robert
A. Gordon,* J.

An application for leave to prosecute an interlocutory appeal
was allowed by *Judith A. Cowin,* J., in the Supreme Judicial
Court for the county of Suffolk, and the appeal was reported by
her to the Appeals Court.

*Jane Davidson Montori,* Assistant District Attorney, for the
Commonwealth.

*Barry Auskern* for the defendant.

FECTEAU, J. The Commonwealth filed this interlocutory appeal
of a District Court judge's allowance of the defendant's motion

to suppress the results of a breathalyzer test[1] for a violation of 501 Code Mass. Regs. § 2.55 (2004). The judge below found that the breathalyzer test operator failed to conduct pretest observation of the defendant for fifteen minutes at the testing location, where the defendant was advised of his rights and consented to the test. While we do not agree with the judge's narrow interpretation of the above regulation, we affirm the order of suppression on the facts of this case.

The defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor in violation of G. L. c. 90, § 24(1)(a)(1).[2] General Laws c. 90, § 24K, inserted by St. 1986, c. 620, § 17, requires that a chemical analysis of the breath of a person charged with a violation under c. 90 "shall not be considered valid . . . unless such analysis has been performed by a certified operator, using infrared breath-testing devices according to methods approved by the secretary of public safety." Section 24K further directs the Secretary of Public Safety to "promulgate rules and regulations regarding satisfactory methods, techniques and criteria for the conduct of such tests."

The regulation relied upon by the District Court judge, 501 Code Mass. Regs. § 2.55 (2004), advises that the breathalyzer test operator "should" keep the defendant in observation for fifteen minutes.[3] The purpose of the fifteen-minute waiting period is to ensure that the defendant has not brought any substance into

---

[1] The challenged test readings were 0.14 and 0.15.

[2] The defendant was also charged with violating a municipal ordinance by traveling the wrong way down a one-way street, and violating G. L. c. 90, § 13A, for failure to wear a seat belt.

[3] At the time in question, 501 Code Mass. Regs. § 2.55 (2004) read as follows:

"If after being advised of his or her rights in accordance with the provisions of [G. L.] c. 90, a person arrested for operating under the influence of intoxicating liquor consents to submit to a breath test, he or she shall as soon as reasonably possible, be taken to the nearest facility within the jurisdiction of the arresting department or agency or the nearest convenient facility with a certified breath testing device and simulator and a certified breath testing operator for administration of the test. Upon arrival at the facility the person arrested shall in addition to any other requirements of law or departmental or agency procedure, be advised of his right to an independent medical examination in accordance with [G. L.] c. 263, § 5A. The subject should be observed by the breath test operator for at least 15 minutes before the administration

his mouth, such as food, drink, or regurgitation by burping or by hiccoughing, that would have had a contaminating impact on the accuracy of the results, and to permit a sufficient lapse in time to allow such possible contaminants to clear. See *ibid.*; *Commonwealth* v. *Kelley*, 39 Mass. App. Ct. 448, 452 n.5 (1995), citing 501 Code Mass. Regs. § 2.55 (1987). Unwritten but clearly implied in the regulation and its interpretation by *Commonwealth* v. *Kelley, supra,* is that a new period of observing the arrestee would be necessary upon the detection of such a contaminating event.[4] The Commonwealth correctly conceded at argument that it bore the burden of proof with respect to the admissibility of the breathalyzer results and does not argue that any facts as found by the motion judge were clearly erroneous.

In this case, the arresting officer, a member of the State police, was also the breathalyzer operator. The record shows that he was with the defendant from the time of the traffic stop until the breathalyzer test was performed, for a total amount of time between approximately forty minutes and one hour, well exceeding fifteen minutes prior to the test. We believe that the regulation does not preclude observation of an arrestee by the breathalyzer operator outside the breathalyzer room; to the extent that the judge's decision below was based upon such an overly narrow interpretation, it was erroneous.[5]

On the facts of this case, however, the Commonwealth failed to meet its burden of showing compliance with the approved "satisfactory methods" for conducting breathalyzer tests promulgated pursuant to G. L. c. 90, § 24K. See 501 Code Mass.

---

of the test to insure that the subject does not take anything orally or smoke and is not burping or hiccoughing."

[4]We note the silence of the record as to the effect of a contaminating event on a subsequent test conducted without the passage of time sufficient to clear the contaminants from the mouth.

[5]Although the regulation states that the arrestee "shall . . . be taken to the nearest facility . . . with a certified breath testing device," 501 Code Mass. Regs. § 2.55 (2004), there is no explicit requirement that the operator, who is to observe the arrestee for the fifteen minutes prior to the test, must make those observations at that facility. Even if this additional measure were required by the regulation, a failure to do so in the circumstances of this case would amount to a mere "deviation[] from meticulous compliance" that goes to the weight of the evidence, not admissibility. *Commonwealth* v. *Kelley*, 39 Mass. App. Ct. at 453.

Regs. § 2.03 (2004) ("No breath test administered in the Commonwealth of Massachusetts shall be valid for purposes of the enforcement of [G. L.] c. 90 unless it is administered . . . in accordance with approved breath-testing procedures, all as set forth in 501 [Code Mass. Regs. §] 2.00"). As was made explicit in the then-current version of 501 Code Mass. Regs. § 2.55 (2004), an operator is to observe an arrestee "to insure that the subject does not take anything orally or smoke and is not burping or hiccoughing."[6] While the officer testified as to his knowledge of the requirement and purpose of the observation period, he also described the fifteen-minute period as a waiting period for the breathalyzer to warm up. Critically, the officer did not testify to how he made his observations on this occasion or what he observed, including whether he observed a contaminating event or not. Instead, he testified merely about the chronology of events preceding the test, estimating times at which various events occurred, and the length of his "interaction" with the defendant.

On this poorly developed record, the evidence was confusing, at best, as to the events leading up to the first breathalyzer test, which the judge found to have commenced at about 3:20 A.M. This was in part due to inconsistencies in the officer's testimony on the subject of time. The officer indicated that at 2:57 A.M., he called to the barracks to inform the dispatcher that he had an arrestee in custody and to request start-up of the breathalyzer machine, which required a warm-up period. He also stated that from the location of the arrest to the barracks was a five- to ten-minute drive. The officer testified that he was with the defendant at the station at 3:00 A.M., but also that he arrived at the station with the defendant at approximately 3:07 A.M. to 3:10 A.M. On one occasion the officer stated that 3:00 A.M. was when he began to enter information about the defendant into the breathalyzer, even though he previously stated that this was the time that the dispatcher turned on the breathalyzer in response to his call. According to the form printed out by the breathalyzer machine after the test, 3:00 A.M. was the time when the defendant was "first observed." The record was unclear whether the 3:00 A.M. time

_____

[6]We note that among other changes appearing in the now-current version of the regulation, 501 Code Mass. Regs. § 2.55 (2006), the quoted language above has been omitted from the regulation's final sentence. We express no opinion how the newer regulation would affect our analysis were it applicable here.

figure was entered automatically by the machine, and refers objectively to the actual time at which the machine was turned on (or at which information about the defendant was first entered), or entered manually as subjective officer input of the time of first observation of the defendant.[7]

The judge found, as conceded by the officer at one point, that the amount of time the defendant spent in the breathalyzer room prior to the test was only eight minutes, beginning at about 3:12 A.M. It is unclear from the record precisely where the officer and the defendant were located, and what they were doing, from 3:05 A.M. to 3:12 A.M. The only testimony to that end was that, prior to walking the defendant to the breathalyzer room and seating him next to the breathalyzer, the officer transported the defendant to the station and removed him from the vehicle, a process that required five to ten minutes. There was no evidence offered of actual observations, consistent with the purposes of the regulation, that the officer was making of the defendant during the seven minutes prior to entering the breathalyzer room, if any, or during the next eight minutes immediately prior to the first test. The officer's testimony on direct examination did not establish that he made observation of the defendant for any amount of time, only that he "interact[ed]" with the defendant for more than fifteen minutes. The officer's two assertions that he observed the defendant for a period of time, which were made on cross-examination and in a colloquy with the judge, were summarily made, not responsive to the questions asked, and inconsistent with each other.[8] Given these facts, including the likelihood that the officer's attention was occupied by other activities

---

[7]The officer testified that "[a]t the time that you put into the machine as first observed and the time that it the actual time now is not past the 15 minutes, the machine will not allow you to continue," and that one must "punch in the first observation time into the computer and there's a countdown."

[8]On cross-examination, in response to defense counsel's question as to the time at which the officer told the dispatcher to start the machine, the officer testified that "[m]y exact time that I observed [the defendant] [was] for 15 minutes, it took me 15 minutes no matter what, as I stated to you the machine won't let me continue unless I observe for 15 minutes." That testimony demonstrates the officer's apparent conflation of the breathalyzer's requirement that he must wait for fifteen minutes before administering the test, and the law's requirement that he observe the defendant for fifteen minutes before administering the test.

Later, when the judge asked the officer to confirm that he stopped the

on their way to the breathalyzer room, the Commonwealth's evidence was not even minimally probative of the possibility that a contaminating event may have occurred in the relevant time frame.

Even when considered under the lower threshold that the admissibility of evidence requires, we are not satisfied that the Commonwealth has made a sufficient showing of compliance with the letter and purpose of the statute and regulation requiring that the breathalyzer be validly administered for admissibility of this evidence. We recognize that, in the vast majority of cases, weakness in this evidence is not a ground for suppression, as it would instead go to the weight of the evidence and not its admissibility. We decline to adopt the Commonwealth's suggestion that such should be the result in this case, however. We view the record in this case as showing substantial deviation from regulatory compliance and that there is a limit as to how much deviation may occur before rendering test results inadmissible. Whatever the precise limit may be, we believe it was exceeded in this case. Admission of breathalyzer test results in the circumstances represented in this record would undermine the express purpose of 501 Code Mass. Regs. § 2.55 (2004), and represents more than a mere "deviation[] from meticulous [regulatory] compliance." *Commonwealth* v. *Kelley*, 39 Mass. App. Ct. at 453.

Finally, we do not adopt the interpretation urged by the defendant that the fifteen-minute waiting period must follow the consent by the defendant to the administration of the test. On its face, the regulation does not require that the fifteen-minute observation period commence after consent is given. Moreover, such a reading would allow the arrestee to delay unnecessarily the taking of the test by unduly pondering his grant of consent without any corresponding relationship with or benefit to the purpose of the observation period.

*Order allowing motion to suppress affirmed.*

---

defendant forty minutes before administering the first breathalyzer test, the officer responded that "the time that I observed from that time he was at the barracks, would be from 3:00 o'clock to 3:20 when he gave his first sample." The officer's statement to the judge was both inconsistent with his prior assertion that he observed the defendant for fifteen minutes and at odds with his prior testimony as to when he arrived at the barracks.