Agnes, Peter W., J.
1. Introduction
The defendant Kevin Frasier is charged in a two-count indictment with {1) operating a motor vehicle on a public way with a percentage by weight of alcohol in his blood of 0.08% or greater [G.L.c. 90, §24(l)(a)(l)] and (2) operating a motor vehicle on a public way while under the influence of alcohol [G.L.c. 90, §24(l)(a)(l)]. He has filed a motion in limine to exclude the results of a breathalyzer test administered by the Hopedale Police on grounds that the police failed to comply with the regulations promulgated by the Secretary of Public Safety for the administration of breathalyzer tests. Based upon the credible evidence presented at an evidentiary hearing, I make the following findings of fact and rulings of law.
2. Factual background
The defendant was arrested by officer Carl Ambrosino of the Upton Police Department on July 25, 2008 at about 11:50 p.m. and charged with operating under the influence of alcohol. The defendant was brought to the Upton Police Department for booking. He was advised of his right to take a breathalyzer test and consented to take the test. A test was performed, but due to an invalid reading the test results were not valid. Officer Ambrosino, a certified breathalyzer operator, transported the defendant to the Hopedale Police Department for the test. The distance between the two locations is about 6 miles and the drive time was about 10 minutes. During the ride to Hopedale, the defendant was in handcuffs and seated in the rear of the cruiser. During the ride, officer Ambrosino and the defendant engaged in small talk. Officer Ambrosino made observations of the defendant, did not observe him eat or drink anything, or hear the defendant burp or make any noises. Officer Ambrosino was aware of the requirement of a fifteen-minute observation period before the administration of a breath test, but he considered that observation period the responsibility of Hopedale Police Officer Mark Giovanella. The defendant was not under constant observation during the ride to Hopedale, and it is unclear whether Officer Ambrosino could hear any burping or belching by the defendant while inside the front seat of the cruiser.
3.
The Hopedale Police Department has a videotaping system it uses to record the activities of persons during the booking process. A videotape record was made of the defendant’s activities from the time he entered the Hopedale Police Department until the administration of the breath test. The court viewed the tape which is about nine minutes in length. See exhibit #2. The videotape shows officer Ambrosino’s cruiser arriving at the Hopedale Police Department. The recording shows him exiting his vehicle and escorts the defendant into the Hopedale Police Department where they are met by Officer Mark Giovanella who also is a certified breathalyzer operator. The videotape shows the defendant seated in handcuffs while Officer Mark Giovanella is engaged in what appears to be paperwork and preparations for the breath test. The videotape also shows Officer Carl Ambrosino standing by. Neither officer has the defendant under continuous observation. The tape does not reveal that the defendant ate or drank anything, or that he belched or burped before the test was administered. I credit the testimony of officer Giovanella that he did make observations of the defendant, and did not observe him burp or cough or ingest anything prior to the administration of the test. Based on the testimony of the witnesses, the documentary evidence, and the videotape, I find that the period of time the defendant was inside the Hopedale police station before the breath test was administered was about 9 minutes and the time he was in the custody of Officer Ambrosino on his way to Hopedale was about 10 minutes.
4.
According to the breath test ticket, the result of the first air blank test was 0.00%, the result of the first subject test was 0.15%, the result of the second air blank test was 0.00%, the result of the calibration standard test was 0.14%, the result of the third air blank test was 0.00%, the result of the second subject test was 0.15%, and the result of the final air blank test was 0.00%. See exhibit 1.
*508 5. Discussion
Under G.L.c. 90, §24K, the police are required to use infrared breath testing technology in performing chemical tests of breath or blood in cases in which a person has been arrested for operating under the influence of alcohol.[1] Section 20K required the Secretary of Public Safety to adopt rules and regulations for the training and certification of breath testing operators, instructors and devices. See 501 Code of Mass. Regs. (Hereafter, “C.M.R.”) §2.01. One of those regulations establishes the terms and conditions under which breath test results will be valid and admissible in court. 501 C.M.R. §2.03 provides as follows:
A breath test administered in the Commonwealth of Massachusetts shall be valid and admissible in a court of law for purposes of the enforcement of M.G.L.c. 90, if it is administered: (1) by a certified breath-test operator, (2) utilizing a certified breath-testing device and simulator; and (3) in accordance with approved breath-testing procedures, all as set forth in 501 CMR2.00.
See also 501 C.M.R. §2.51 (“In order to be valid and admissible in court, a breath test must be administered in accordance with 501 CMR 2.00”). The burden of establishing compliance with the requirements for admission of breath test results rests with the Commonwealth. Commonwealth v. Pierre, 72 Mass.App.Ct. at 232. In the present case, the defendant does not challenge the certification of the breath test operator. Nor does he question whether the police used a certified breath-testing device. Rather, the defendant maintains that for two reasons the police did not follow “approved breath testing procedures” as required by 501 C.M.R. §2.03. First, the defendant maintains that 501 C.M.R. §2.55 mandates that there be a period of continuous and uninterrupted observation by a certified breath test operator prior to the administration of a breath test in order for the test to be valid. Second, the defendant maintains that even if the observation period required by §2.55 does not have to be continuous and uninterrupted, the breath test operator who administers the test must be at least one of the persons who conducts the observation period.
6.
It is appropriate to begin the analysis of these questions by examining the precise words of the regulation. It reads as follows:
If after being advised of his or her rights in accordance with the provisions of M.G.L.c. 90, a person arrested for operating under the influence of intoxicating liquor consents to submit to a breath test, he or she, as soon as reasonably possible, shall be taken to a facility with certified breath testing devices. Anytime after the arrest and prior to the administration of a breath test, the individual under arrest shall be advised of his or her right to an independent medical examination in accordance with G.L.c. 263, 5A. The individual under arrest should be observed by the breath testing operator for at least 15 minutes prior to the administration of the test.
501 C.M.R. §2.55. The purpose of the fifteen-minute waiting period is “to ensure that the defendant has not brought any substance into his mouth, such as food, drink, or regurgitation by burping or by hiccoughing, that would have had a contaminating impact on the accuracy of the results, and to permit a sufficient lapse in time to allow such possible contaminants to clear. Commonwealth v. Pierre, 72 Mass. at 231-32, citing Commonwealth v. Kelley, 39 Mass.App.Ct. 448, 452 n.5 (1995).[2] In Pierre, the Appeals Court rejected the position taken by the trial judge that the waiting period required by 501 C.M.R. §2.55 must occur entirely inside the police station. 72 Mass.App.Ct. at 232.
7.
However, notwithstanding its disagreement with the reasoning by the trial judge, in Commonwealth v. Pierre, the Appeals Court reversed the defendant’s conviction and ordered a new trial because it was not satisfied that the Commonwealth had demonstrated compliance with 501 C.M.R. §§2.03 and 2.55.
There was no evidence offered of actual observations, consistent with the purposes of the regulation, that the officer was making of the defendant during the seven minutes prior to entering the breathalyzer room, if any, or during the next eight minutes immediately prior to the first test. The officer’s testimony on direct examination did not establish that he made observation of the defendant for any amount of time, only that he “interacted]” with the defendant for more than fifteen minutes. The officer’s two assertions that he observed the defendant for a period of time, which were made on cross-examination and in a colloquy with the judge, were summarily made, not responsive to the questions asked, and inconsistent with each other. Given these facts, including the likelihood that the officer’s attention was occupied by other activities on their way to the breathalyzer room, the Commonwealth’s evidence was not even minimally probative of the possibility that a contaminating event may have occurred in the relevant time frame . . . We view the record in this case as showing substantial deviation from regulatory compliance and that there is a limit as to how much deviation may occur before rendering test results inadmissible. Whatever the precise limit may be, we believe it was exceeded in this case.
Pierre, 72 Mass.App.Ct. at 234-35.
8.
Just as the Appeals Court reasoned in the Pierre case that 501 C.M.R. §2.55 should be given a practical interpretation based on its underlying purpose[3] it is not reasonable to read §2.55 to require that the period of observation be continuous and uninterrupted in the *509 sense that the breath test operator must not do anything else but observe the defendant for at least fifteen minutes before the test is administered. In small and medium size police departments, the certified breath test operator also may have to perform some other duties besides observation of the test subject such as paperwork, answering the phone, or communicating with other officers. However, as the Kelley court noted, the regulation requiring a fifteen-minute observation period before the test is not satisfied merely by evidence that there was some interaction between the defendant and the police for at least fifteen minutes before the test. It is the certified breath test operator who is solely responsible for the integrity of the individual test. In the present case, unlike in Kelley or in Pierre, the court has the advantage of a videotape of the goings on in the room where the defendant and the two officers were present during the nine minutes or so leading up to the test. This evidence leads the court to find that the test subject was not “observed by the breath testing operator for at least 15 minutes prior to the administration of the test” as required by 501 C.M.R. §2.55. For the most part, the videotape indicates that neither officer Ambrosino nor officer Giovanella paid much attention, if any, to the defendant prior to the administration of the test. While I credit the testimony of officer Giovanella that he did not recall the defendant burping or belching during this time, given the extent to which he was occupied with other tasks during the approximately 9 minutes that the defendant was inside the Hopedale Police Department, it is not possible to conclude that he was capable of noting any such behavior on the part of the defendant. Additionally, it is not possible to conclude that the defendant did or did not burp or belch simply from a viewing of the videotape. Moreover, during the ride from Upton to Hopedale, officer Ambrosino candidly admitted that he did not think it was his responsibility to make observations of the defendant for purposes of compliance with 501 C.M.R. §2.55, and the record does not permit a finding that the defendant did not burp or belch or put something in his mouth during that ride. When the pair arrived at the Hopedale Police Department, officer Ambrosino exited his cruiser and walked to the rear door to let the defendant out before escorting the defendant into the police station. For a period of time, therefore, the defendant was out of the officer’s sight.
9.
A reasonable interpretation of 501 C.M.R. §2.55 that takes into account the practical demands made upon law enforcement is that the test subject should be in the presence of the certified breath test operator for at least fifteen minutes, that the two should be close enough to each other to enable the certified breath test operator to hear as well as to see the defendant, and that the test subject should be the primary, though not necessarily the exclusive focus of the certified breath test operator during that period of time. This interpretation does not mean that the certified breath test operator cannot perform other police duties during the fifteen-minute observation period, but the observation of the subject who is to take a breath test should be the operator’s primary responsibility. However, it is an interpretation that is consistent with the overarching purpose of G.L.c. 90, §24K which is to establish and enforce a scientifically accurate system for testing and measuring the blood alcohol levels of persons who have been arrested for operating under the influence of alcohol, and which provides for the exclusion of evidence at trial which has not been gathered in accordance with the terms of the statute and the regulations adopted under its authority. This court will not overlook the deficiencies in this case or characterize them as not substantial, but simply mere “deviations from meticulous compliance” with the law. See Commonwealth v. Kelley, 39 Mass.App.Ct. at 453. Thus, there is no basis for the view that the deficiencies in this case should be considered by the finder of fact at trial as bearing on the weight to be given to the test results because it would undermine the scientific reliability of and public confidence in the Commonwealth’s carefully designed alcohol breath testing program.
ORDER
Based on the above findings of fact and rulings of law, the Commonwealth has failed to meet its burden of establishing by a preponderance of the evidence that the breath test administered to the defendant by the Hopedale Police was performed in accordance with G.L.c. 90, §20K and 501 C.M.R. §§2.51 and 2.55, and therefore the breath test results may not be admitted into evidence at the defendant’s trial.

‘General Laws c. 90, §24K, inserted by St. 1986, c. 620, §17, requires that a chemical analysis of the breath of a person charged with a violation under c. 90 ‘shall not be considered valid . . . unless such analysis has been performed by a certified operator, using infrared breath-testing devices according to methods approved by the secretary of public safety.’ Section 24K further directs the Secretary of Public Safety to ‘promulgate rules and regulations regarding satisfactory methods, techniques and criteria for the conduct of such tests.’ ” Commonwealth v. Pierre, 72 Mass.App.Ct. 230, 231 (2008).

 501 C.M.R. §2.55 has been amended. Originally, the regulation made specific reference to its purpose by stating in the final sentence that the observation period was designed to “insure that the subject does not take anything orally or smoke and is not burping or hiccoughing.” See Commonwealth v. Pierre, 72 Mass. at 231-32 n.3. In the current version of §2.55, the portion of the final sentence quoted above is omitted. This court attaches no significance to the omission other than perhaps to suggest that the observation period is important to prevent the occurrence of any event that might adversely affect the accuracy of the test results.

For example, in Pierre, where the arresting officer who had the defendant under observation on the way to the police station was also the certified breath testing officer who administered the test, the Appeals Court opined that the regulation in question , 501 C.M.R. §2.55 (1987), did not require *510 that the 15-minute observation period occur entirely within the police station. 72 Mass.App.Ct. at 232 n.5.