## COMMONWEALTH *vs.* SEAN M. PETTIT.

No. 11-P-1177.

Berkshire. December 13, 2012. - March 6, 2013.

Present: GREEN, GRAHAM, & SULLIVAN, JJ.

*Motor Vehicle,* Operation, License to operate, Ignition interlock device. *Registrar of Motor Vehicles,* Revocation of license to operate.

This court reversed the defendant's conviction of operating a motor vehicle without an ignition interlock device while his license was subject to a restriction requiring such a device, where the defendant's license did not remain in force after it previously had been revoked as a result of his removal of the ignition interlock device from his vehicle. [403-405]

COMPLAINT received and sworn to in the Northern Berkshire Division of the District Court Department on January 20, 2010.

The case was heard by *Paul M. Vrabel,* J.

*Chrisoula I. Roumeliotis* for the defendant.

*John P. Bossé,* Assistant District Attorney, for the Commonwealth.

GREEN, J. This appeal asks us to determine whether a driver's license that has been revoked by reason of the licensee's removal of an ignition interlock device (IID) installed pursuant to G. L. c. 90, § 24½,[1] nonetheless remains in force, so as to support

---

[1]General Laws c. 90, § 24½, inserted by St. 2005, c. 122, § 13, authorizes the Registrar of Motor Vehicles, after hearing, to "revoke for an extended period or for life, the license of whoever removes" an IID installed as a precondition to issuance of a new license (or restoration of a previously suspended license) after suspension of a license following a second conviction of operating a motor vehicle while intoxicated. Under the regulations promulgated by the Registrar, an IID-restricted operator who improperly removes the IID from his vehicle shall have his license to operate "immediately returned to a suspended or revoked status." 540 Code Mass. Regs. § 25.08(11) (2006).

conviction under G. L. c. 90, § 24S,[2] of operation of a motor vehicle not equipped with an IID. We conclude that a driver's license does not remain in force after revocation and reverse the defendant's conviction.

*Background.* The defendant was convicted on August 15, 1996, of operating a motor vehicle under the influence of intoxicating liquor. See G. L. c. 90, § 24. On December 9, 1999, he was convicted of operating a motor vehicle under the influence of intoxicating liquor, second offense. As a result of his convictions, his driver's license was revoked on December 16, 1999. In May of 2007, the defendant sought to have his license reinstated. Pursuant to G. L. c. 90, § 24½, restoration of his license (which occurred on May 24, 2007) was conditioned on the installation of a certified IID on his car.[3] However, on November 26, 2007, the defendant's license was revoked as a result of his removal of the IID. See note 1, *supra.* Thereafter, on July 28, 2009, the defendant was stopped while driving a vehicle without an IID. Following a jury-waived trial, he was convicted on a charge of operating a motor vehicle without an IID while his license was subject to restriction requiring such a device, pursuant to G. L. c. 90, § 24S.[4] On appeal, he contends that his conviction cannot stand, because he did not have a license at the time of his arrest and hence could not have been operating in violation of a restriction on his license.

---

[2]The statute, a portion of the legislation known as "Melanie's Law," St. 2005, c. 122, provides in pertinent part as follows:

> "Whoever, upon any way or place to which the public has a right of access, or upon any way or place to which members of the public have access as invitees or licensees, operates a motor vehicle that is not equipped with a certified functioning ignition interlock device while his license or right to operate has been restricted to operating only motor vehicles equipped with such device shall be punished . . . ."

G. L. c. 90, § 24S, inserted by St. 2005, c. 122, § 17.

[3]As defined in G. L. c. 90, § 24S(*b*), "the term 'certified ignition interlock device' shall mean an alcohol breath screening device that prevents a vehicle from starting if it detects a blood alcohol concentration over a preset limit of .02 or 20 mg of alcohol per 100 ml of blood."

[4]The complaint issued against the defendant also included a count alleging violation of G. L. c 90, § 23, for operation of a motor vehicle following suspension or revocation of his license. That charge was dismissed, upon the Commonwealth's motion, prior to trial.

*Discussion.* As we have observed, the defendant's license was revoked on December 16, 1999, following his second conviction of operating under the influence. When the defendant's license was reinstated, on May 24, 2007, it included a restriction requiring installation of an IID in accordance with the provisions of G. L. c. 90, § 24½. However, the defendant's license was thereafter again revoked following his removal of the required IID. In prosecuting him for violation of G. L. c. 90, § 24S, for operating a motor vehicle while his license to operate was subject to an IID restriction, see note 2, *supra*, the Commonwealth contends that the defendant held a license, subject to a restriction, even though his license to operate had been revoked. We disagree.

"We interpret a statute 'according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language . . . to the end that the purpose of its framers may be effectuated.' " *Commonwealth* v. *Deberry*, 441 Mass. 211, 215 (2004), quoting from *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). See *Commonwealth* v. *Wynton W.*, 459 Mass. 745, 747 (2011). In seeking to interpret a statute, the starting point is its language. See *Commonwealth* v. *Welch*, 444 Mass. 80, 85 (2005). "Statutory language should be given effect consistent with its plain meaning. Where . . . that language is clear and unambiguous, it is conclusive as to the intent of the Legislature." *Commissioner of Correction* v. *Superior Ct. Dept. of the Trial Ct. for the County of Worcester*, 446 Mass. 123, 124 (2006).[5] "If it is a criminal statute we interpret, the rule of lenity requires that the defendant be given the benefit of the ambiguity." *Commonwealth* v. *Deberry*, 441 Mass. at 216. In interpreting a statute, we extend substantial deference to the interpretation given to it by the administrative body charged with its enforcement. See *Commerce Ins. Co.* v. *Commissioner of Ins.*, 447 Mass. 478, 481 (2006). However, the principle of deference is not absolute; "[a]n incorrect interpretation of a statute . . . is not entitled to

---

[5]Conversely, "[w]here the statutory language is not conclusive, we may 'turn to extrinsic sources, including the legislative history and other statutes, for assistance in our interpretation.' " *Commonwealth* v. *Deberry*, 441 Mass. at 215-216, quoting from *Chandler* v. *County Commrs. of Nantucket County*, 437 Mass. 430, 435 (2002).

deference." *Ibid.*, quoting from *Kszepka's Case*, 408 Mass. 843, 847 (1990).

General Laws c. 90, § 24S, imposes substantial penalties on anyone who operates a motor vehicle without an IID "*while* his license or right to operate has been restricted to operating only motor vehicles equipped with such device" (emphasis added). In the present case, the defendant's license had previously been so restricted. However, at the time of his arrest he held no license at all; it had been revoked. The statute, of course, could provide that it applies to any person who operates a motor vehicle after his license has been suspended for unauthorized removal of an IID required under G. L. c. 90, § 24½, as a precondition to reinstatement of his license. Section 24S, however, contains no such language.

The Commonwealth's contention that the defendant held a license subject to an IID restriction is plainly untenable. Under that view, the defendant would have been authorized to operate a motor vehicle with a functioning IID even though his license to operate had been revoked entirely. Put another way, a license simply cannot be both restricted and revoked at the same time.

The Commonwealth protests that its proffered construction must be upheld in order to avoid an absurd result, see *Commonwealth* v. *Rahim*, 441 Mass. 273, 278 (2004), in that a defendant subject to an IID restriction otherwise may avoid the harsh penalties applicable under G. L. c. 90, § 24S, for violation of the IID restriction by the simple expedient of removing the interlock device from his car, and thereby prompting revocation of his license.[6] Though we acknowledge the result, we note that a similar anomaly applies to a defendant whose license is revoked after conviction of operating under the influence but who never seeks reinstatement of his license under G. L. c. 90, § 24½, and instead simply continues to operate a motor vehicle

---

[6]The penalty for violating G. L. c. 90, § 24S, includes a mandatory minimum sentence of 180 days in a house of correction, of which at least 150 days must be served, and authorizes imprisonment of up to two and one-half years. By contrast, a first offense under G. L. c. 90, § 23, carries "a fine of not less than five hundred nor more than one thousand dollars or by imprisonment for not more than ten days, or both."

without a valid license.[7] To the extent that the policy objective the Legislature sought to advance by the enactment of Melanie's Law would be served more effectively by imposing enhanced penalties on persons who operate a motor vehicle after suspension or revocation of their license by reason of the unauthorized removal of a required IID, the authority to modify the statute to accomplish that goal is with the Legislature rather than with us.

*Judgment reversed.*

*Finding set aside.*

*Judgment shall enter for the defendant.*

---

[7]Under the third paragraph of G. L. c. 90, § 23, operating a motor vehicle after revocation or suspension for various enumerated alcohol-related offenses carries a mandatory minimum sentence of sixty days in a house of correction, of which at least sixty days must be served.