NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1394

COMMONWEALTH

vs.

KEVIN A. LARA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Waltham Division of the District Court Department, the defendant, Kevin Lara, was convicted of operating a motor vehicle with a blood alcohol level of .08 percent or greater, second offense, in violation of G. L. c. 90, § 24 (1) (a) (1), and operating without an ignition interlock device (IID), in violation of G. L. c. 90, § 24S (a). On appeal, the defendant argues that the judge erred in denying his motion to suppress evidence obtained as a result of the vehicle stop and subsequent breathalyzer test. He also contends that the evidence was insufficient to prove operation without an IID. We affirm.

Background.  We summarize the evidence presented at the motion hearing and the trial.[1]  Shortly after 9 P.M. on November 20, 2022, Detective McMeekin was dispatched to the area of 92 Lowell Street, in Waltham, to respond to a potential hit-and-run.

An identified 911 caller reported that a black Jeep struck a white pickup truck near 92 Lowell Street and was traveling towards Moody Street.[2]  Detective McMeekin was already patrolling in that neighborhood and began scanning the area for dark-colored Jeeps.  There was very light traffic in that area at the time.

As he was driving south on Lowell Street, toward 92 Lowell Street, Detective McMeekin saw a dark-colored vehicle driving towards him with its headlights off.  That vehicle's headlights turned on after a few moments, and Detective McMeekin noted that they were the distinctive, circular-shaped lights found on a Jeep Wrangler or Gladiator.  He also noticed that two headlights were illuminated on the driver's side, but only one on the passenger's side.

---

[1] Our review of the denial of the defendant's motion to suppress is confined to the judge's findings bearing on that issue, as not all trial evidence was introduced at the suppression hearing.

[2] In fact, Lowell Street and Moody Street run parallel to each other, one block apart.

Soon after driving past that Jeep, Detective McMeekin arrived at 92 Lowell Street and observed a white pickup truck parked on the northbound side of the road. The truck had damage to its back end consistent with having been struck by a vehicle traveling north on Lowell Street. Detective McMeekin then called another officer to respond to the scene and drove off in pursuit of the Jeep he had just seen driving north on Lowell Street.

The detective drove north on Lowell Street. At the intersection of Lowell and Pine Streets, he noticed a dark Jeep driving west on Pine Street and believed that it may have been the same vehicle he had just seen. He turned left and began following the Jeep west on Pine Street. As the Jeep turned left onto Moody Street, the detective noticed that it was missing its front right fender, which was consistent with (1) the missing headlight on the passenger's side of the Jeep he had seen earlier, and (2) the damage to the rear of the white pickup. At this point, Detective McMeekin executed a traffic stop near the Moody Street fire station. He executed the stop less than six minutes after receiving the dispatch.

Detective McMeekin approached the Jeep, confirmed that there was damage to the front of the vehicle, and identified the driver as the defendant. The detective noticed a large piece of plastic in the front passenger seat of the Jeep, which he

3

believed to be the missing fender. Detective McMeekin noticed that the defendant had bloodshot, glassy eyes, and that there was an odor of alcoholic beverage emanating from the Jeep. When asked if he had been drinking, the defendant reported, in somewhat slurred speech, having had two beers earlier that evening.

The defendant handed his driver's license to Detective McMeekin and stated that he believed his license was suspended. Detective McMeekin noticed that the license had a "T" restriction, meaning that the defendant was required to drive a vehicle equipped with an IID. The Jeep was not equipped with an IID. The defendant informed another officer who had responded to the scene that he was driving his wife's car that evening because it did not have an IID. The defendant then failed two field sobriety tests and was placed under arrest.

At the police station, the defendant agreed to take a breathalyzer test. Sergeant Florio was the booking officer and administrated the test. Procedure requires a fifteen-minute observation period before administering a breathalyzer test, to make sure that the arrestee is not burping or otherwise regurgitating, which could introduce additional alcohol into their mouth and skew the results of the test. See 501 Code Mass. Regs. § 2.13 (2016). Sergeant Florio testified that the defendant touched his face at some point during the observation

period, but that he did not see the defendant introduce anything into his mouth or "vomit" anything. The test result indicated that the defendant had a blood alcohol concentration of .22 percent.

The defendant filed a motion to suppress the evidence obtained from the traffic stop and the results of his breathalyzer test. A judge denied the motion after a two-day evidentiary hearing. At trial, the jury found the defendant guilty of operating under the influence and operating without an IID. The defendant timely appealed his convictions.

Discussion. 1. Motion to suppress. a. Motor vehicle stop. The defendant argues that the judge erred in denying his motion to suppress evidence obtained from the motor vehicle stop because Detective McMeekin lacked the individualized suspicion required to support the stop. Specifically, he contends that because he was driving in a different direction than the 911 caller reported, the police lacked reasonable suspicion that he had committed the hit-and-run on Lowell Street. We disagree.

"In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of [the] . . . ultimate findings and conclusions of law" (quotations and citation omitted). Commonwealth v. Goncalves-Mendez, 484 Mass. 80, 83 (2020). "An investigatory stop is justified under art. 14 if the police have

'reasonable suspicion, based on specific, articulable facts and reasonable inferences therefrom, that an occupant of the . . . motor vehicle had committed, was committing, or was about to commit a crime.'" Commonwealth v. Depiero, 473 Mass. 450, 453-454 (2016), quoting Commonwealth v. Alvarado, 423 Mass. 266, 268 (1996).

"Reasonable suspicion does not require a full match-up of all parts of the description" (quotation and citation omitted). Commonwealth v. Lopes, 455 Mass. 147, 158 (2009). "Police 'must be allowed to take account of the possibility that some descriptive facts supplied by victims or witnesses may be in error.'" Id. at 158-159, quoting Commonwealth v. Emuakpor, 57 Mass. App. Ct. 192, 198 (2003).

"When, as here, a police radio broadcast directs officers to make an investigatory stop of a motor vehicle, the stop is lawful only if the Commonwealth establishes both the indicia of reliability of the transmitted information and the particularity of the description of the motor vehicle." Lopes, 455 Mass. at 155. "To establish that the transmitted information bears adequate indicia of reliability, the Commonwealth must show the basis of knowledge of the source of the information (the basis of knowledge test) and the underlying circumstances demonstrating that the source of the information was credible or the information reliable (veracity test)." Id. at 155-156,

citing Commonwealth v. Upton, 394 Mass. 363, 374-375 (1985). "Independent police corroboration may make up for deficiencies in one or both of these factors." Commonwealth v. Lyons, 409 Mass. 16, 19 (1990).

Here, an identified 911 caller had reported their personal observation that a black Jeep hit a white pickup truck, on Lowell Street, and was traveling towards Moody Street, at approximately 9 P.M. This information "more than satisfied both the basis of knowledge test and the veracity test." Lopes, 455 Mass. at 155.

The fact that the detective first saw the defendant's Jeep driving north on Lowell Street, rather than west "towards Moody Street," as the caller reported, did not negate the detective's reasonable suspicion that the defendant's Jeep was involved in the accident. To the contrary, the fact that the defendant was driving north on Lowell Street, away from the area of the accident, within minutes after 911 call, supported a reasonable suspicion that he was involved in the accident. See Lopes, 455 Mass. at 158-159. This is especially true where traffic was light at 9 P.M., the defendant was driving the only Jeep in the area, the color of the Jeep matched the caller's report, and Detective McMeekin observed that the Jeep's right front headlight was damaged, consistent with the location of the damage on the rear of the white pickup truck. These

observations provided sufficient "particularity of the description of the motor vehicle" involved in the accident. Lopes, supra at 155. In sum, Detective McMeekin's independent corroboration of the 911 caller's descriptive facts was sufficient to support an individualized suspicion that the defendant's Jeep struck the white pickup truck and then left the scene. See Lyons, 409 Mass. at 19. Accordingly, the stop of the defendant's Jeep was reasonable and the motion to suppress evidence obtained from the stop was properly denied.

b. Breathalyzer test. The defendant argues that the judge erred in denying his motion to suppress the breathalyzer test results because the police did not substantially comply with the regulations for properly administering the test. We disagree.

The defendant likens his case to Commonwealth v. Pierre, 72 Mass. App. Ct. 230 (2008), where we affirmed a judge's finding that an officer substantially deviated from the fifteen-minute observation procedure required by the testing regulations. "The purpose of the fifteen-minute waiting period is to ensure that the defendant has not brought any substance into his mouth, such as food, drink, or regurgitation by burping or by hiccoughing, that would have had a contaminating impact on the accuracy of the results, and to permit a sufficient lapse in time to allow such possible contaminants to clear." Pierre, supra at 231-232.

In Pierre, the administering officer did not testify about

8

what he observed during the waiting period, including whether or not he noticed a "contaminating event." 72 Mass. App. Ct. at 233. That officer also described the fifteen-minute period as a "waiting period for the breathalyzer to warm up," rather than a period where he was responsible for observing the defendant. Id. This court noted that, although in the vast majority of cases this sort of weakness in evidence would typically go to weight and not admissibility, the errors in Pierre were significant enough to render the results of the breath test inadmissible. Id. at 235.

Here, the defendant focuses on an officer's testimony that he saw the defendant touch his face a few times during the waiting period. But that same officer explicitly testified that he did not witness the defendant put anything into his mouth or vomit. This is markedly different from the situation in Pierre, where the officer administering the test did not closely observe the defendant during the waiting period and could not say whether there had been a contaminating event. See Pierre, 72 Mass. App. Ct. at 233. As such, the judge did not err in finding that the officers substantially complied with the fifteen-minute observation procedure required by 501 Code Mass. Regs § 2.13. Accordingly, we discern no error in her denial of the defendant's motion to suppress the test results.

2. Operating without IID charge. a. Sufficiency. The defendant argues that the judge erred in denying his motion for a required finding of not guilty on the IID charge, because "ambiguous evidence" regarding the status of his driver's license on the date of the arrest required that the jury speculate as to an essential element of the crime. We disagree.

Because "a license simply cannot be both restricted and [suspended] at the same time," the defendant presented evidence that his license was merely suspended, as an affirmative defense. Commonwealth v. Pettit, 83 Mass. App. Ct. 401, 404 (2013). Specifically, the defendant relied on his own hearsay statement during the traffic stop, elicited through Detective McMeekin on cross-examination, that he believed his license was suspended, and a document from the registry of motor vehicles (RMV) showing that his license was suspended nine days after the traffic stop.

A sufficiency argument requires us to view the evidence in the light most favorable to the Commonwealth. Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). Evidence is insufficient to support a conviction when "an essential element of the crime" is left "entirely to conjecture or surmise." Id. at 678. In order to convict the defendant for failure to have an IID in violation of G. L. c. 90, § 24S (a), the Commonwealth was required to prove (1) that he operated a motor vehicle; (2)

10

that he did so on a public way; (3) that the motor vehicle he drove was not equipped with a functioning IID; and (4) that his license was restricted to operating only vehicles with such a device. Criminal Model Jury Instructions for Use in the District Court, Instruction 5.520 (2014). The evidence established that the defendant had a restricted license at the time of his arrest. Furthermore, the only potential evidence of suspension was the defendant's own, uncorroborated,[3] hearsay statement.[4] In the light most favorable to the Commonwealth, the jury was free to reject his claim. As such, the judge did not err in denying the defendant's motion for a required finding of not guilty.

    b. <u>Jury instruction</u>. Furthermore, the defendant did not present sufficient evidence to adequately raise an affirmative

---

    [3] We do not agree with the defendant's characterization of this RMV evidence as probative of a claim that his license was suspended on November 20, 2022. The document merely establishes that his license was suspended when the document was printed (on November 29, 2022) and is not probative of whether his license was suspended on November 20, 2022. Indeed, the fact that the defendant failed a breathalyzer test on November 20, 2022, triggered an automatic thirty-day administrative suspension of his license, which was in effect on November 29, 2022. See G. L. c. 90, § 24 (1) (<u>f</u>) (2).

    [4] A defendant's own out-of-court statement is inadmissible hearsay when it is offered by the defendant, rather than the Commonwealth, and for its truth. See <u>Commonwealth</u> v. <u>McCowen</u>, 458 Mass. 461, 485-486 (2010); Mass. G. Evid. § 801(d)(2) (2025).

11

defense, so the judge did not abuse her discretion in declining to instruct the jury that a license cannot be suspended and restricted at the same time.  See Commonwealth v. Byung-Jin Kang, 91 Mass. App. Ct. 182, 184-185 (2017).  "[A] defendant ultimately 'is not entitled to a charge on a hypothesis which is not supported by the evidence,'" and "[b]are, uncorroborated hearsay . . . will not suffice to adequately raise [an affirmative] defense, and thereby will not entitle a defendant to a jury instruction."  Id. at 185, quoting Commonwealth v. Monico, 373 Mass. 298, 299 (1977).  Accordingly, we discern no error in the judge's denial of the defendant's request for such an instruction.

Judgments affirmed.

By the Court (Meade,
  Desmond & Wood, JJ.[5]),

Clerk

Entered:  February 12, 2026.

---

[5] The panelists are listed in order of seniority.

12