## COMMONWEALTH *vs.* ZOANNE ZEININGER.

Franklin. February 7, 2011. - May 24, 2011.

Present: IRELAND, C.J., SPINA, COWIN, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.[1]

*Motor Vehicle,* Operating under the influence. *Evidence,* Breathalyzer test, Hearsay, Business record, Expert opinion. *Constitutional Law,* Breathalyzer test, Confrontation of witnesses. *Practice, Criminal,* Confrontation of witnesses, Hearsay. *Witness,* Expert.

Discussion of the statutory and regulatory framework regarding the conditions placed on the admissibility in evidence, at a criminal trial, of the results of a breathalyzer test. [778-781]

At the trial of a criminal complaint charging the defendant with operation of a motor vehicle while under the influence of intoxicating liquor, the judge properly admitted in evidence as business records the annual certification, and accompanying diagnostic records, attesting to the proper functioning of the breathalyzer machine used to test the defendant's blood alcohol content, where the certification records were made in good faith, in the regular course of business, and at the time of certification, two months before the defendant's arrest; and where the certification records did not reflect the judgment and discretion or expressions of opinion of the technician making the certification, but rather signified that the diagnostic testing and calibration procedures prescribed by regulation were satisfactorily performed [781-784]; further, the admission of the certification records, in the absence of the technician who tested the machine, did not violate the defendant's right under the Sixth Amendment to the United States Constitution to confront witnesses against her, where the certification records were not testimonial, in that they bore only on the admissibility or credibility of the evidence of the breathalyzer test results, and in that, at the time they were made, their primary purpose was to guarantee the accuracy and standardization of all breathalyzer testing equipment across the various police departments of the Commonwealth [785-789].

At the trial of a criminal complaint charging the defendant with operation of a motor vehicle while under the influence of intoxicating liquor, the judge did not abuse her discretion in permitting a police officer to testify regarding the proper functioning of the breathalyzer machine used to test the defendant's blood alcohol content and the machine's ability to differentiate between so-called "mouth alcohol" and alcohol from the consumption of liquor, where, with regard to the functioning of the machine, the officer merely affirmed his prior testimony that his periodic calibration testing

---

[1]Justice Cowin participated in the deliberation on this case prior to her retirement.

produced satisfactory results, and where, with regard to the differentiation between types of alcohol, the officer possessed specialized knowledge and his testimony assisted the jury in a matter beyond their common experience. [789-791]

There was no merit to the claim that, at the trial of a criminal complaint charging the defendant with operation of a motor vehicle while under the influence of intoxicating liquor, the evidence was insufficient to demonstrate that a police officer observed the defendant for fifteen minutes prior to conducting a test of her blood alcohol content. [791-793]

COMPLAINT received and sworn to in the Greenfield Division of the District Court Department on April 17, 2007.

The case was tried before *Maureen E. Walsh*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Patricia A. DeJuneas* for the defendant.

*Steven Greenbaum*, Assistant District Attorney, for the Commonwealth.

CORDY, J. The principal issue in this case is whether an annual certification, and accompanying diagnostic records, attesting to the proper functioning of the breathalyzer machine used to test a defendant's blood alcohol content were admissible in a criminal prosecution for operating a motor vehicle while under the influence of intoxicating liquor, G. L. c. 90, § 24 (1) (*a*) (1), without the live testimony of the technician who had performed the certification test on the machine. The certification and supporting records were created as part of a regulatory program providing standardized mechanisms for the routine maintenance of all breathalyzer machines throughout the Commonwealth. Given this fact, we conclude that they were admissible in evidence as business records pursuant to G. L. c. 233, § 78, and were not testimonial statements within the scope of protection afforded by the confrontation clause of the Sixth Amendment to the United States Constitution.[2] As such, their admission in this case was not error, and the conviction of the defendant, Zoanne Zeininger, is affirmed.

[2]The defendant, Zoanne Zeininger, does not separately contend that the admission of the records violates the confrontation clause of art. 12 of the Massachusetts Declaration of Rights. See note 15, *infra*.

1. *Background.*[3] On the evening of April 13, 2007, Zeininger drove through a flashing red light at the intersection of Main Street and Bank Row in Greenfield without bringing her vehicle to a complete stop. Officer Patrick Buchanan of the Greenfield police department pulled Zeininger's vehicle over. He observed that Zeininger's eyes were bloodshot, her speech was slurred, and she smelled of alcohol. Zeininger told him that she consumed two pints of ale at a local tavern and, later, another "half pint or so" at a friend's home. Officer Buchanan instructed Zeininger how properly to complete various field sobriety tests. After observing her perform four different tests, he concluded that Zeininger was intoxicated and arrested her for operating a motor vehicle while under the influence of intoxicating liquor (OUI), in violation of G. L. c. 90, § 24 (1) (*a*) (1).

At the Greenfield police station, Zeininger telephoned a friend to discuss whether she should provide consent to submit to a chemical analysis test of her breath to determine the alcohol content in her blood (breathalyzer test). Eventually, she consented to administration of the breathalyzer test. During her testimony at trial, she recounted that the stress of her arrest exacerbated her acid reflux condition and that she regurgitated acid into her mouth. Zeininger also testified that just moments before taking the breathalyzer test, she "spit up" acid into her mouth and then spit that reflux fluid into a trash can. Officer Buchanan, who was observing Zeininger through a doorway from an adjacent room, testified that he did not see Zeininger spit into the trash can and that the closest trash can in the station was situated ten feet from the booking room where Zeininger was awaiting administration of the breathalyzer test.

Officer Buchanan proceeded to administer the breathalyzer test. Zeininger gave two breath samples that each registered a blood alcohol content of 0.10 per cent on the breathalyzer device. After a two-day jury trial, Zeininger was convicted of operating a motor vehicle with a blood alcohol level of 0.08 percent or greater, and sentenced to a one-year term of proba-

---

[3]These facts are drawn from the evidence at trial, viewed in its light most favorable to the Commonwealth. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). Many of the particular facts were strenuously contested by Zeininger at trial.

tion and ninety-day loss of license. G. L. c. 90, § 24D. Zeininger appealed, and we transferred the case to this court on our own motion.

2. *Statutory framework.* To support a prima facie case for OUI, the prosecution must prove three elements: (1) the defendant was in physical operation of the vehicle; (2) on a public way or place to which the public has a right of access; and (3) had a blood alcohol content percentage of .08 or greater, or was impaired by the influence of intoxicating liquor. G. L. c. 90, § 24 (1) (*a*) (1). The first alternative of the third element is proved by admission in evidence of a report memorializing the results of a chemical test of the defendant's blood alcohol content of the percentage by weight, which in practice is commonly conducted using a breathalyzer machine. See G. L. c. 90, § 24 (1) (*e*); *Commonwealth* v. *Steele*, 455 Mass. 209, 210 (2009).

General Laws c. 90, § 24 (1) (*e*), places several conditions on the admissibility of the results of a breathalyzer test, and the prosecution must prove compliance with those conditions as a foundational matter before the judge may admit the results in evidence.[4] *Commonwealth* v. *Lopes, ante* 165, 173 (2011). Under G. L. c. 90, § 24K, the results of a breathalyzer test "shall not be considered valid" and, thus, are inadmissible in evidence at a subsequent prosecution for OUI, unless "performed by a certified operator using a *certified* infrared breath-testing device" (emphasis supplied). A breathalyzer test must further comply with several specific "rules and regulations regarding satisfactory methods, techniques and criteria for the conduct of such tests," as promulgated by the Secretary of Public Safety.[5] G. L.

---

[4]Under G. L. c. 90, § 24 (1) (*e*), breathalyzer test results "shall be admissible and deemed relevant" only if the subject actually consented to the test and was properly notified of her right to an independent medical examination (see G. L. c. 263, § 5A), and the test's administrator promptly provided the subject with the results of the test. Pursuant to the statutory scheme, a subject must also be advised that her consent is required before a breathalyzer test may be conducted, and that if she refuses, her driver's license is automatically suspended for 180 days. G. L. c. 90, § 24 (1) (*f*) (1). See *Commonwealth* v. *Lopes, ante* 165, 173 n.8 (2011).

[5]We cite to the 2006 iteration of the regulations because they were operative during the relevant time period. 501 Code Mass. Regs. §§ 2.00 (2006). The

c. 90, § 24K. 501 Code Mass. Regs. §§ 2.00 (2006). See 501 Code Mass. Regs. § 2.51.

The regulations promulgated pursuant to G. L. c. 90, § 24K, establish an office of alcohol testing (OAT) within the State police crime laboratory. 501 Code Mass. Regs. § 2.10. The OAT is charged with maintaining a list of approved breathalyzer machines, subject to several enumerated criteria. 501 Code Mass. Regs. § 2.38.[6] In order to effectuate the requirement that all breathalyzer tests are conducted on certified devices, the regulations provide that OAT must annually certify that any breathalyzer machine in use is compliant with certain regulatory criteria. 501 Code Mass. Regs. §§ 2.39, 2.40. See *Commonwealth* v. *Barbeau*, 411 Mass. 782, 786 (1992). The certification process consists of several diagnostic tests performed by OAT technicians, including a blind test of the breathalyzer machine and its calibration simulator using an approved solu-

regulations have been amended and recodified, but the changes do not appear meaningfully to depart from the 2006 regulations as they relate to the specific legal issues raised. See 501 Code Mass. Regs. §§ 2.00 (2010).

[6]Title 501 Code Mass. Regs. § 2.38 provides, in relevant part:

> "The Office of Alcohol Testing [OAT] shall maintain a list of approved Infrared Breath Testing instruments and simulators including the brand and model number. A device may be added to the list of approved breath testing devices by the director of the [OAT] if it is on the National Highway Traffic Safety Administration list of conforming products and it meets the following criteria, but need not be limited to:

> "(1) capable of analyzing specimens of alveolar or deep lung air;

> "(2) capable of analyzing a reference sample of alcohol within +/- 0.01 blood alcohol content units of the known sample;

> "(3) capable of performing subject breath testing, including at least two air blank analyses, and printing the test results in the following sequence:

> "(a) one adequate breath sample analysis;

> "(b) one calibration standard analysis; and

> "(c) a second adequate breath sample analysis.

> "(4) capable of printing the breath testing operator certification, the breath testing instrument certification and the breath testing simulator certification; and

> "(5) using infrared breath testing technology."

tion to ensure that the machine registers a reading that matches the known alcohol content of the solution.[7] See OAT Breath Test Operator Manual §§ 10.0-10.4 (2006). Acetone is also added to the solution to gauge the breathalyzer machine's ability to detect interferants. *Id.* at § 10.2. The effective dates of certification of the breathalyzer machine and the simulator must be annotated on the report created by the breathalyzer machine at the completion of a test (breathalyzer results report).[8] 501 Code Mass. Regs. §§ 2.39-2.40. See G. L. c. 90, § 24K. The breathalyzer results report also lists the model and serial number of the breathalyzer machine, its calibration simulator device, and the type of alcohol simulation solution used to conduct the required calibration analysis.[9] OAT Breath Test Operator Manual, *supra.*

Because this notation of certification appears on the same

---

[7]A calibration simulator is a component of a breathalyzer machine used to calibrate the machine. The simulator replicates the process of detecting human breath by measuring a standard liquid solution. See 501 Code Mass. Regs. § 2.43; OAT Breath Test Operator Manual §§ 7.0-7.4 (2006).

With regard to calibration procedures, the OAT regulations require the (1) performance of valid periodic calibration tests, see note 9, *infra*; and (2) calibration of the machine using the simulator between the first and second of the two required tests of an arrestee's breath. 501 Code Mass. Regs. § 2.56(3). See *Commonwealth* v. *Barbeau*, 411 Mass. 782, 786 (1992).

Under the current regulatory framework, the standard simulation solution has an alcohol percentage of 0.155 with a .005 per cent margin of error at thirty-four degrees Celsius (temperature of human breath). 501 Code Mass Regs. § 2.11(2) (2010).

[8]This report has been labeled the "Implied Consent Report" by the office of alcohol testing (OAT) and is automatically generated every time a breathalyzer test is conducted. See 501 Code Mass. Regs. § 2.39.

[9]In addition to the annual certification of the breathalyzer machines, in order for breathalyzer test results to be admissible, breathalyzer machines must also undergo a "periodic" test sequence at the police station to ensure the machine is properly calibrated. G. L. c. 90, § 24K. See 501 Code Mass. Regs. § 2.41. Evidence of compliance with the periodic calibration tests must be provided by the Commonwealth prior to admission of the breathalyzer test results in evidence. 501 Code Mass. Regs. §§ 2.41, 2.51. See *Commonwealth* v. *Barbeau*, *supra.* The periodic test sequence consists of five consecutive calibration tests of the simulator. The individual performing the periodic calibration testing of the breathalyzer machine at issue here was Officer David Rice, the officer in charge of the Greenfield breathalyzer machine. See note 20, *infra.* See also 501 Code Mass. Regs. § 2.54 ("For each certified breath testing device and simulator in the Commonwealth, there shall be an Officer in Charge"). Officer Rice testified for the Commonwealth. See note 20, *infra.*

report as the results of the breathalyzer test, as a matter of practice, it is admitted in evidence and published to the jury in an OUI prosecution. In this case, the breathalyzer results report indicates that the Greenfield police department machine used on the night of Zeininger's arrest was certified on February 13, 2007, and valid through February 13, 2008. The Commonwealth also introduced OAT documents detailing the results of the diagnostic testing performed by OAT technicians as part of this annual certification process.[10]

The notation of certification on the breathalyzer results report and accompanying diagnostic records (collectively, OAT certification records) serve two independent evidentiary purposes. First, the OAT certification records are proof of conformity with the foundational predicate to admissibility of the breathalyzer test results required by G. L. c. 90, § 24K, and 501 Code Mass. Regs. §§ 2.38-2.39. Second, proof of OAT certification may be relevant to aid the jury in weighing the reliability of the test results. *Commonwealth* v. *Durning*, 406 Mass. 485, 490-494 (1990) (defendant has right to challenge accuracy of machine); *Commonwealth* v. *Yameen*, 401 Mass. 331, 336 (1987), cert. denied, 486 U.S. 1008 (1988) (adequacy of breathalyzer test procedure goes to weight of evidence). See Mass. G. Evid. § 104(e), at 9 (2011) (jury may consider evidence relevant to weight and credibility).

3. *Discussion.* Zeininger's principal argument on appeal is that the judge committed an error of constitutional dimension when she admitted in evidence the OAT certification records.[11] Zeininger argues that (1) the OAT certification records amounted to out-of-court statements that did not fall within any cogniz-

---

[10]Neither the notation of certification on the breathalyzer results form nor the diagnostic records contains the name of the OAT technician providing the certification.

[11]A police officer may not administer a breathalyzer test unless he is a "certified operator." G. L. c. 90, § 24K. The OAT and the municipal police training committee of the Executive Office of Public Safety jointly administer a uniform Statewide program for the training, certification, and recertification of all breath test operators pursuant to a uniform curriculum. The breath test operator's name and effective dates of his certification are printed on the breathalyzer results report, along with the test results. 501 Code Mass. Regs. § 2.25. Zeininger does not contend that Officer Buchanan was an uncertified operator.

able exception to the hearsay rule, and (2) were testimonial evidence, introduced by the Commonwealth without an opportunity to cross-examine the OAT technician who tested the breathalyzer machine, in violation of the confrontation clause of the Sixth Amendment. See *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2532 (2009) (*Melendez-Diaz*); *Crawford* v. *Washington*, 541 U.S. 36, 51-52 (2004) (*Crawford*).

We have held that the admissibility of an out-of-court statement in a criminal trial is to be determined by a two-part inquiry: "a statement must first be evaluated for admissibility under normal evidence rules, i.e., whether it qualifies as a hearsay exception." *Commonwealth* v. *Nardi*, 452 Mass. 379, 391 (2008) (*Nardi*), quoting *Commonwealth* v. *Burgess*, 450 Mass. 422, 431 n.6 (2008). "Then, the [challenged] statement must be appraised under the criteria of *Crawford* . . . to determine if it satisfies the confrontation clause of the Sixth Amendment." *Nardi*, *supra* at 391-392, quoting *Commonwealth* v. *Burgess*, *supra*. We address each requirement in turn.

a. *Hearsay exception.* Generally, out-of-court statements offered to establish the truth of the matter asserted are inadmissible at trial under the rule against hearsay. See Mass. G. Evid., *supra* at § 802, at 243. Hearsay statements contained in official business records, however, are admissible if (1) the entry, writing, or record was made in good faith; (2) in the regular course of business; (3) before the beginning of the civil or criminal proceeding in which it is offered; and (4) it was the regular course of such business to make such a memorandum at the time of such act, transaction, occurrence, or event or within reasonable time thereafter.[12] G. L. c. 233, § 78. See *Commonwealth* v. *Trapp*, 396 Mass. 202, 208 (1985); *Commonwealth* v. *Sellon*, 380 Mass. 220, 230 & n.15 (1980). "The operations of the instrumentalities of government constitute 'business' within the meaning of the statute." *Sawyer & Co.* v. *Southern Pac. Co.*, 354 Mass. 481, 484 (1968), quoting *LaPorte* v. *United States*, 300 F.2d 878, 880 (9th Cir. 1962).

The certification records are derived from a computerized

---

[12]When the judge at a criminal trial admits a business record under this exception to the hearsay rule, the questions of fact serving as a basis for its admissibility must be submitted to the jury. G. L. c. 233, § 78.

database maintained by OAT. It is undisputed that the OAT
certification records admitted in evidence were made on or
around February 13, 2007, two months prior to Zeininger's ar-
rest, when OAT performed its annual certification tests on the
Greenfield police department breathalyzer machine. See G. L.
c. 233, § 78. It is also uncontroverted that the OAT certification
records were made and maintained by public officials acting
under a statutory duty to comply with a rigorous regulatory
certification program that expressly charges them with produc-
ing the records at issue. G. L. c. 90, § 24K. 501 Code Mass.
Regs. §§ 2.29, 2.38-2.40. This is sufficient to establish not only
that the records were made in good faith, but that OAT, as an
office, generates such records in the regular course of business
and at the time of certification. G. L. c. 90, § 24K. 501 Code
Mass. Regs. §§ 2.29, 2.38-2.40. See *Commonwealth* v. *This-
sell,* 74 Mass. App. Ct. 773, 777-778 (2009), *S.C.,* 457 Mass.
191 (2010).[13]

Zeininger argues, however, that the OAT certification records
do not qualify for the business records exception to the hearsay
proscription because they reflect the opinions and evaluative
statements of a government official. *Nardi, supra* at 394. See
*Mattoon* v. *Pittsfield,* 56 Mass. App. Ct. 124, 135 (2002). This
argument is misplaced. In *Nardi, supra* at 393, quoting *Com-
monwealth* v. *Slavski,* 245 Mass. 405, 417 (1923), we held that
an unavailable medical examiner's opinion as to cause of death
constituted hearsay because it concerned "causes and effects
involving the exercise of judgment and discretion, expressions
of opinion, and making conclusions," which have not tradition-
ally been within the ambit of the exception for public or official
records, an exception not identical with the business records

---

[13]The records of diagnostic testing in this case were accompanied by an af-
fidavit sworn to by the director of OAT, attesting that the records "have been
maintained in good faith, in the regular course of business, independent of the
pending action, and that it is the regular course of business to make such rec-
ords at the time of the event(s) recorded, or within a reasonable time thereafter."
The notation of certification on the breathalyzer results report is merely a
shorthand reflection of the information in these records, that the machine is
properly maintained and in compliance with the required diagnostic testing.
The affidavit is further corroboration that the records comported with the
foundational requirements of G. L. c. 233, § 78.

· exception.[14] See *Julian* v. *Randazzo*, 380 Mass. 391, 393 (1980) (police report, comprising investigating officer's opinion and recommendation, not admissible); *Commonwealth* v. *Slavski*, *supra.*

The OAT certification records are distinguishable. They memorialize the results of routine scientific measurements. The certification, rather than reflecting "judgment and discretion" or "expressions of opinion" of an OAT technician, merely signifies that the diagnostic testing and calibration procedures prescribed by regulation were satisfactorily performed. *Vassallo* v. *Baxter Healthcare Corp.*, 428 Mass. 1, 17 (1998) (scientific studies containing primarily factual data admissible as business records). Cf. *Nardi, supra*; *Commonwealth* v. *Slavski, supra.*

Zeininger also points to United States Supreme Court jurisprudence, which counsels that even if a record is prepared in the regular course of business, it does not qualify as a business or official record under the Federal rules of evidence if it was "calculated for use essentially in the court, not in business." *Melendez-Diaz, supra* at 2538, quoting *Palmer* v. *Hoffman*, 318 U.S. 109, 114 (1943) (discussing accident reports). See Fed. R. Evid. 803(8). She misapprehends the significance of the quoted statement as it relates to the OAT certification records. First, although they share many similarities, Massachusetts courts follow statutory and common law of evidence, not the Federal rules. More importantly, the OAT certification records are not "calculated for use essentially in the court." *Palmer* v. *Hoffman, supra.* Rather, OAT prepares the certification records in concert with its statutory charge to administer an internal regulatory program that standardizes "satisfactory methods, techniques and criteria for the conduct of [breathalyzer] tests." G. L. c. 90, § 24K. In this sense the records are "typical of entries made *systematically* or as a matter of routine to . . . *provide internal controls*," which are admissible under the Federal rules and the common law (emphasis supplied). *Palmer* v. *Hoffman, supra* at 113. In sum, the OAT certification records were admissible under the business records exception to the hearsay rule. G. L. c. 233, § 78.

---

[14]The public or official records exception is recognized in various statutes, see, e.g., G. L. c. 233, §§ 75-76B, 79A, and 79E, and at common law. *Commonwealth* v. *Slavski*, 245 Mass. 405, 415 (1923).

b. *Confrontation clause.* The confrontation clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[15] The United States Supreme Court has held that the confrontation clause guarantees a defendant the opportunity to confront any person, in the "crucible of cross-examination," whose "testimonial" statements are introduced against him. *Crawford, supra* at 50-52, 61. While *Crawford, supra* at 51-52, 68, endeavored to "leave for another day any effort to spell out a comprehensive definition of 'testimonial,' " the Court instructed that "[v]arious formulations of this core class of 'testimonial' statements exist." These definitions, the Court stated, "all share a common nucleus" as follows:

> " 'ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' . . . 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;' *White* v. *Illinois,* 502 U.S. 346, 365 (1992) (Thomas, J., joined by Scalia, J., concurring in part and concurring in the judgment), 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' "

*Id.* at 51-52.

In *Melendez-Diaz, supra* at 2532, the Supreme Court held that certificates of drug analysis, memorializing the results of

[15]The Sixth Amendment to the United States Constitution was made applicable to the States through the Fourteenth Amendment to the United States Constitution in *Pointer* v. *Texas,* 380 U.S. 400, 403 (1965). Article 12 also affords a criminal defendant the right "to meet the witnesses against him face to face." When the question of admissibility concerns the relationship between the hearsay rule, as applied in Massachusetts, on the one hand, and the constitutional right to confrontation, on the other, "the protection provided by art. 12 is coextensive with the guarantees of the Sixth Amendment." *Commonwealth* v. *DeOliveira,* 447 Mass. 56, 57 n.1 (2006), citing *Commonwealth* v. *Whelton,* 428 Mass. 24, 28 (1998), and *Commonwealth* v. *Childs,* 413 Mass. 252, 260 (1992).

forensic analysis performed to determine the identity and quantity of a chemical substance suspected to be a controlled substance, fall within this "core class of testimonial statements." See G. L. c. 94C, § 31; G. L. c. 111, § 13. Although denominated "certificates," the Court held the documents were "quite plainly" "ex parte out-of-court affidavits." *Melendez-Diaz, supra* at 2532, 2542. The Court held that the certificates of analysis were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," and in fact, it was established by statute that the "sole purpose" of the analysis was to provide prima facie evidence in criminal prosecutions. *Id.* at 2532, quoting *Crawford, supra* at 52. See G. L. c. 111, § 13.

The Court also repudiated the argument that the certificates of analysis were admissible without confrontation because they were "akin to the types of official and business records admissible at common law." *Melendez-Diaz, supra* at 2538. The Court held that it was the testimonial character of the certificates of analysis that triggered the confrontation right, notwithstanding their admissibility under State rules of evidence. *Id.* at 2539-2540. See *Commonwealth* v. *Gonsalves*, 445 Mass. 1, 14 (2005), cert. denied, 548 U.S. 926 (2006). As such, the Court drew a distinction between traditionally admissible business records and testimony within the scope of the confrontation clause: "Business and public records are generally admissible absent confrontation . . . because — having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial — they are not testimonial." *Melendez-Diaz, supra.*

Here, the OAT certification records are outside the orbit of the "common nucleus" of the various definitions of "testimonial" set forth in *Crawford, supra* at 51-52. See *Rembusch* v. *State*, 836 N.E.2d 979, 982 (Ind. Ct. App. 2005); *State* v. *Bergin*, 231 Or. App. 36, 41-42 (2009). Whereas certificates of drug analysis were offered as direct proof of an element of the offense charged, *Melendez-Diaz, supra* at 2532, the OAT certification records bear only on the admissibility or credibility of the evidence. The OAT certification records are offered, first, as proof that the Commonwealth has met a foundational predicate

to admissibility of the breathalyzer test results and, then, either through direct testimony or by implication, as evidence bolstering the reliability of those results.[16] See *Commonwealth* v. *Durning*, 406 Mass. 485, 492-494 (1990); Mass. G. Evid. § 104(e), at 9 (2011). See also note 13, *supra.* We agree with the Court of Appeals of Oregon, which concluded that such records "bear a more attenuated relationship to conviction: They support one fact (the accuracy of the machine) that, in turn, supports another fact that can establish guilt (blood alcohol level)." *State* v. *Bergin, supra* at 41. Indeed, it appears that the Supreme Court has already acknowledged this attenuation, stating in *Melendez-Diaz, supra* at 2532 n.1: "Contrary to the dissent's suggestion . . . we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. . . . [D]ocuments prepared in the regular course of equipment maintenance may well qualify as nontestimonial records."[17]

Further, the OAT certification records were made "for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial," the distinction the Supreme Court forged between business records traditionally admissible absent confrontation and testimonial records subject

[16]The notation of certification, by virtue of its physical placement on the breathalyzer results report, will be published to the jury in any case where breathalyzer test results are admitted. See note 8, *supra.* There is no requirement that the Commonwealth either obtain or move to admit in evidence the diagnostic records, and the judge may decide whether to admit such records going to the weight and credibility of the evidence on a case-by-case basis. See Mass. G. Evid. § 104(e), at 9; Mass. G. Evid. § 403, at 35 (2011) (relevant evidence may be excluded if probative value substantially outweighed by danger of unfair prejudice).

[17]This important caveat in the Court's opinion comes in response to a point raised by Justice Kennedy in his dissenting opinion: "Consider the independent contractor who has calibrated the testing machine. At least in a routine case, where the machine's result appears unmistakable, that result's accuracy depends entirely on the machine's calibration. The calibration, in turn, can be proved only by the contractor's certification that he or she did the job properly. That certification appears to be a testimonial statement under the Court's definition: It is a formal, out-of-court statement, offered for the truth of the matter asserted, and made for the purpose of later prosecution." *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2545 (2009) (Kennedy, J., dissenting) (*Melendez-Diaz*).

to confrontation. *Melendez-Diaz, supra* at 2539-2540. See *Crawford, supra* at 56. The OAT certification records are maintained in the routine administration of the affairs of an administrative agency tasked with quality control, not with supplying evidence "taken for use at trial." *Michigan* v. *Bryant*, 131 S. Ct. 1143, 1155 (2011) ("objective of the Confrontation Clause" is to provide opportunity to cross-examine when statements are "taken for use at trial"). See 501 Code Mass. Regs. § 2.01 (purpose of OAT regulations is to establish uniform "rules . . . for the training and certification of breath testing operators, instructors and devices"). The primary purpose of OAT certification is to guarantee, internally, as a matter of course, and when necessary, in court, the accuracy and standardization of all breathalyzer testing equipment across the various police departments of the Commonwealth. See 501 Code Mass. Regs. § 2.26 ("uniform statewide Certification Instruction program"), § 2.38 ("maintain a list of approved Infrared Breath Testing instruments and simulators [meeting specific criteria]"). At the time of certification, the hypothetical use of that record in an as-yet-unknown criminal proceeding is merely an ancillary purpose, subordinate in importance to the "administration of the entity's affairs." *Melendez-Diaz, supra* at 2539. See *Crawford, supra* at 56.

In comparison to a chemist who authors certificates of drug analysis, a technician certifying a breathalyzer machine has no "particular prosecutorial use in mind."[18] *State* v. *Bergin, supra*. The certificate of analysis is particularized and performed in aid of a prosecution seeking to prove the commission of a past act and, thus, resembles the type of "ex parte in-court testimony or its functional equivalent" at the nucleus of the confrontation clause. *Crawford, supra* at 51, 52. That the OAT certification records are generalized and performed prospectively in primary aid of the administration of a regulatory program makes all the difference. See *Crawford, supra* at 51-52. See also *State* v. *Bergin, supra*. Consequently, we conclude that the OAT certifica-

[18]Here, we again concur with the Court of Appeals of Oregon, which reasoned: "Although [breathalyzer machines] produce evidence that is used only in criminal prosecutions or administrative hearings, the person who performs the test of a machine's accuracy does so with no particular prosecutorial use in mind, and, indeed, there is no guarantee that the machine will ever, in fact, be used." *State* v. *Bergin*, 231 Or. App. 36, 41 (2009).

tion records are nontestimonial, and their admission without the live testimony of the technician who prepared them did not violate the confrontation clause of the Sixth Amendment.[19]

c. *Other claims of error.* (i) *Improper expert testimony.* Zeininger argues that the judge impermissibly allowed Officer David Rice,[20] the officer in charge of the Greenfield police department's breathalyzer machine, to testify that, in his opinion, the machine was "working properly" on the night of the arrest, and was capable of differentiating between so-called "mouth alcohol" and alcohol from the consumption of liquor. See 501 Code Mass. Regs. § 2.54. Zeininger takes particular exception to

---

[19]We are in accord with the Court of Appeals of Oregon, which in 2009 reevaluated, in light of *Melendez-Diaz, supra,* a prior ruling that breathalyzer certification records were nontestimonial, and concluded, "[W]e do not consider [our past analysis] to be overruled." *State* v. *Bergin, supra* at 42. Several other courts have concurred in the Oregon court's analysis. See, e.g., *People* v. *Jacobs,* 405 Ill. App. 3d 210, 216-217 (2010); *Ramirez* v. *State,* 928 N.E.2d 214, 219 (Ind. Ct. App. 2010); *State* v. *Gietzen,* 786 N.W.2d 1, 7 (N.D. 2010). At least one court has disagreed, holding that certification records were testimonial and subject to confrontation. *People* v. *Carreira,* 27 Misc. 3d 293, 296-303 (N.Y. City Ct. 2010), quoting *Melendez-Diaz, supra* at 2532, quoting *Crawford* v. *Washington,* 541 U.S. 36, 52 (2004) (holding, inter alia, "both the calibration and solution testing records are clearly 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use later at trial' ").

We note also that in *Melendez-Diaz, supra* at 2542, the Court stated: "This case involves little more than the application of our holding in *Crawford.*" As such, many other State appellate courts, prior to the ruling in *Melendez-Diaz, supra,* concluded that breathalyzer machine certification records are nontestimonial under *Crawford, supra* at 51-52. See *Abyo* v. *State,* 166 P.3d 55, 59-60 (Alaska Ct. App. 2007); *Bohsancurt* v. *Eisenberg,* 212 Ariz. 182, 188-191 (Ct. App. 2006); *Pflieger* v. *State,* 952 So. 2d 1251, 1253-1254 (Fla. Dist. Ct. App. 2007); *Rackoff* v. *State,* 275 Ga. App. 737, 740-741 (2005), aff'd, 281 Ga. 306 (2006); *State* v. *Marshall,* 114 Haw. 396, 400-402 (Ct. App. 2007); *People* v. *So Young Kim,* 368 Ill. App. 3d 717, 719-721 (2006); *Rembusch* v. *State,* 836 N.E.2d 979, 981-982 (Ind. Ct. App. 2005), quoting *Napier* v. *State,* 820 N.E.2d 144, 149 (Ind. Ct. App. 2005); *State* v. *Dukes,* 38 Kan. App. 2d 958, 960-962 (2008); *Commonwealth* v. *Walther,* 189 S.W.3d 570, 574-575 (Ky. 2006); *State* v. *Carter,* 326 Mont. 427, 435-437 (2005); *State* v. *Fischer,* 272 Neb. 963, 971-973 (2007); *State* v. *Chun,* 194 N.J. 54, 146-148, cert. denied, 129 S. Ct. 158 (2008); *Salt Lake City* v. *George,* 189 P.3d 1284, 1288-1289 (Utah Ct. App. 2008).

[20]Officer David Rice did not participate in the administration of Zeininger's breathalyzer test. He was called to testify based on his familiarity with the OAT certification program, and the functioning and periodic testing of the Greenfield breathalyzer machine.

Officer Rice's statement, elicited on direct examination, that mouth alcohol, such as the acid reflux she claimed was the cause of the failed breathalyzer test, "would shut down the machine." Zeininger argues that Officer Rice's response was an expert opinion, based on scientific, technical, or other specialized knowledge, which was inadmissible unless the judge made preliminary findings of fact regarding the officer's qualifications. See *Commonwealth* v. *Frangipane*, 433 Mass. 527, 533 (2001); Mass. G. Evid. §§ 701-702 (2011).

Testimony in the form of an opinion based on the expertise or specialized knowledge of a witness is admissible if (1) it will aid the triers of fact in understanding issues beyond their common experience, *Commonwealth* v. *Little*, 453 Mass. 766, 768 (2009); *Commonwealth* v. *Boyarsky*, 452 Mass. 700, 716 (2008); and (2) the witness possesses sufficient skill, knowledge, or experience in the particular field to qualify as an expert. See *Commonwealth* v. *Shanley*, 455 Mass. 752, 761-762 (2010); *Adoption of Hugo*, 428 Mass. 219, 232 (1998), cert. denied sub nom. *Hugo P.* v. *George P.*, 526 U.S. 1034 (1999). The judge is not required to hold a voir dire before qualifying an expert, *Commonwealth* v. *Calderon*, 65 Mass. App. Ct. 590, 593 (2006); see *Commonwealth* v. *Ruiz*, 442 Mass. 826, 834 (2004), and the judge's determination may be inferred from the record. *Commonwealth* v. *Boyd*, 367 Mass. 169, 183 (1975). A trial judge has broad discretion to decide whether a witness is qualified to testify as an expert, and that decision is "rarely upset on appellate review." *Commonwealth* v. *Seat*, 373 Mass. 83, 92 (1977).

Here, it is plain from the record that the judge properly concluded that Officer Rice possessed sufficient specialized knowledge to permit his testimony. See *Commonwealth* v. *Little*, *supra*; *Commonwealth* v. *Boyd*, *supra*. Officer Rice testified that he has been certified as a breath test operator under 501 Code Mass. Regs. § 2.25. Officer Rice was also qualified as a breath test instructor, meaning that he has taught police officers who seek certification as breath test operators. See 501 Code Mass. Regs. § 2.26. He testified that in February, 2007, he changed the machine's simulator solution as required by the periodic testing regulations, see note 9, *supra*, and performed the required sequence of simulation tests to ensure the breathalyzer machine

was calibrated. He also testified that prior to the administration of a breathalyzer test, a machine will automatically test the simulator solution, see notes 7 and 9, *supra*, and if the results read greater than 0.01 percent plus or minus the known 0.15 percent alcohol composition of the solution, the machine will "lock up until the solution is changed." After adducing this testimony, the prosecutor asked, "And, in your opinion, was the machine working properly on the date that [Zeininger] took her test?" The judge allowed Officer Rice to answer, "Yes." This was not error. In the context of the preceding exchange, Officer Rice was merely affirming his prior testimony that his periodic calibration testing in February, 2007, produced satisfactory results, see note 9, *supra*, and that the machine's pretest calibration was also valid since the machine did not "lock up." See 501 Code Mass. Regs. § 2.38.

Similarly, the judge did not abuse her discretion in permitting Officer Rice to testify as to the breathalyzer machine's ability to distinguish between mouth alcohol and alcohol detected from the consumption of liquor. He testified that, during his training as a breath test instructor, he gained expertise about the composition of mouth alcohol in substances like mouthwash and vomit. He testified that the breathalyzer machine has the ability to detect the presence of those substances on a person's breath because they contain an unusually high concentration of alcohol. He testified that a breath sample containing mouth alcohol "would shut down the machine," and produce a reading of mouth alcohol. Officer Rice's advanced training from OAT was sufficient to demonstrate his specialized knowledge in the field of breathalyzer machine operation. *Commonwealth* v. *Little*, *supra*. Such testimony also assisted the jury in weighing the ability of the breathalyzer machine to differentiate between the mouth alcohol from acid reflux, as Zeininger claims was the cause of her failed test, and alcohol from liquor — a matter beyond the common experience of jurors. *Id.* There was no error.

(ii) *Observation for fifteen minutes.* As a final matter, Zeininger argues that the evidence at trial was insufficient to demonstrate that Officer Buchanan observed her for fifteen minutes prior to conducting the test, as required by regulation,

and, as such, the test results should have been excluded. See 501 Code Mass. Regs. § 2.55. "The purpose of the fifteen-minute waiting period is to ensure that the defendant has not brought any substance into [her] mouth, such as food, drink, or regurgitation by burping or by hiccoughing, that would have had a contaminating impact on the accuracy of the results, and to permit a sufficient lapse in time to allow such possible contaminants to clear." *Commonwealth* v. *Pierre*, 72 Mass. App. Ct. 230, 231-232 (2008). In that case, the Appeals Court recognized that "in the vast majority of cases, weakness in [evidence of compliance with the fifteen-minute observation period] is not a ground for suppression, as it would instead go to the weight of the evidence and not its admissibility." *Id.* at 235. While mere "deviations from meticulous compliance," *Commonwealth* v. *Kelley*, 39 Mass. App. Ct. 448, 453 (1995), are inadequate to justify suppression of the results of the breathalyzer test, in cases where there is a "substantial deviation," their admission constitutes reversible error. *Commonwealth* v. *Pierre, supra.*

Here, there was no substantial deviation. Officer Buchanan testified that once the breathalyzer machine is turned on, it asks the operator a series of questions, and once activated, the machine will not allow the administration of a test until fifteen minutes has elapsed. Officer Buchanan further testified that he understood that the purpose of this fifteen-minute observation window was to ensure that a defendant did not put a foreign substance in his mouth, burp, or vomit. He testified that he normally observes subjects awaiting a breathalyzer test through a doorway in the booking room, while he initiates the machine in an adjacent room. In addition, he testified that, on the night of Zeininger's arrest, he was not so distracted in answering the questions prompted by the machine that he could not simultaneously observe the defendant. He observed no belching, hiccoughing, or vomiting, nor did he see Zeininger place a foreign substance in her mouth. Officer Buchanan's testimony and the breathalyzer results report indicate that Zeininger was first observed at 1:32 A.M. and the officer performed the first of two tests at 1:47 A.M. Contrary to Zeininger's argument, there is nothing in the record to suggest a "substantial deviation" from compliance

with the fifteen-minute observation period. *Commonwealth* v. *Pierre, supra.* See *Commonwealth* v. *Kelley, supra.*

4. *Conclusion.* For the foregoing reasons, we decline to disturb Zeininger's conviction.

*Judgment affirmed.*