NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-440

COMMONWEALTH

vs.

DAVID ROMAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the District Court, the defendant was convicted of possession of a firearm without a license, see G. L. c. 269, § 10 (a), possession of a loaded firearm without a license, see G. L. c. 269, § 10 (n), and possession of ammunition without a firearms identification card, see G. L. c. 269, § 10 (h) (1). After the jury rendered its verdict, the Commonwealth moved to dismiss the ammunition count as duplicative, and the judge allowed its motion. The defendant was acquitted of possession of a class D substance with intent to distribute, G. L. c. 94C, § 32C (a), and the judge found him not responsible for failing to stop for the police as required

by G. L. c. 90, § 25.  In this direct appeal, the defendant raises two arguments.

The DCJIS employee's testimony.  The defendant argues first that the judge should not have allowed a witness, Kevin Scaplen, to testify that he did a records check as to whether the defendant had a license to carry a firearm and no record of any such license was found.  The witness testified that he works for the Department of Criminal Justice Information Systems and was familiar with the Criminal Justice Information System (CJIS), a system that allows law enforcement agencies to access multiple databases, such as those of the Registry of Motor Vehicles, the Firearms Records Bureau, and the sex offender registry, through one system.  Scaplen testified that he had years of experience using each of these databases from working in the State police.  He explained that when a person searches CJIS for information related to firearms licensing, the system's only search parameters are first and last name and date of birth.  If the person whose information has been entered in this search query has a license or firearms identification card, the system will return the history of that license or firearms identification card.  If the person does not have a license or firearms identification card, the result of the search will be "no records found."  Scaplen testified that he ran a search using

the name "David Roman" and the defendant's date of birth and the result of that search was "no records found."

The defendant argues that the testimony violated the rule against hearsay, that it was inadmissible because Scaplen was not the "keeper of the records," and that it violated the confrontation clause of the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.

In its recent decision in Commonwealth vs. Smith, 496 Mass. 304 (2025), the Supreme Judicial Court addressed similar issues related to the Commonwealth's use of a DCJIS employee's testimony to prove lack of licensure. Smith recognized that, despite the rule against hearsay, "[u]nder our common law, testimony that a search of public records did not turn up a record is admissible to prove the nonexistence of such a record." Id. at 308. See Mass. G. Evid. § 803(10) (2024).[1]

---

[1] "This rule is founded upon two different justifications. See 4 J.H. Wigmore, Evidence § 1244, at 579-580 (Chadbourn rev. ed. 1972). First, such testimony does not seek to establish the contents of an out-of-court document but instead to establish the absence of any document. See 5 C.S. Fishman & A. Toomey McKenna, Jones on Evidence § 34:54 (7th ed. 2023) ('As a general rule, silence is not classified as hearsay'). Second, as a practical matter, such testimony obviates 'the inconvenience of producing voluminous documents' from which the fact finder could perform its own such assessment, J.H. Wigmore, supra, and solves the problem when '[t]he court and jury cannot look

Further, it explained that "[o]ur application of this common-law rule has not been limited to testimony by custodians of public records." Smith, 496 Mass. at 309. In order to testify about the absence of a public record, a witness need only be "familiar with both the process of searching the records and the government's recordkeeping practices with regard to the database." Id. at 311, quoting United States v. Parker, 761 F.3d 986, 992 (9th Cir. 2014). Here, Scaplen's testimony that he had roughly twenty-nine years of experience using the firearms records database, his description of how both firearms licensing authorities and the Firearms Records Bureau use the database as their case management system, and how the database may be searched established his familiarity with the process of searching the database and of the relevant recordkeeping practices. Cf. id. at 312-313. Therefore, neither the rule against hearsay nor the fact that Scaplen was not the custodian of the firearms licensing records at issue barred his testimony.

Finally, as to the confrontation clause and art. 12 issue, Smith held that "the contents of the firearm license database [are] not testimonial" because these records are "created for the administration of [the Commonwealth's] affairs and not for

through the records for themselves,' [Commonwealth v. Meserve, 154 Mass. 64, 71 (1891)]."

Smith, 496 Mass. at 308.

4

the purpose of establishing or proving some fact at trial." Id. at 314-315, quoting Commonwealth v. Zeininger, 459 Mass. 775, 786, cert. denied, 565 U.S. 967 (2011). Given that the contents of the database are not testimonial, neither the confrontation clause nor art. 12 prevented them from being introduced through Scaplen's testimony. See Zeininger, supra at 785 (noting that confrontation clause guarantees defendant opportunity to confront "any person . . . whose testimonial statements are introduced against him" [quotation and citation omitted]).

The prosecutor's opening. The defendant's second argument has to do with the prosecutor's opening statement. As is relevant here, it is uncontested that on the day in question, the police were surveilling the defendant's home. Officer Bissonnette of the Worcester police department saw the defendant leave his house, carrying a camouflage backpack which he placed on the top of the trunk of his car. The defendant then walked around the car, looking around, then placed the camouflage backpack in the trunk. Officer Bissonnette approached the defendant and asked him to stop. The defendant then got into his car and drove away. Officer Bissonnette and another officer stopped the defendant, had him step out of his car and arrested him. The police had the defendant's car towed, then performed an inventory search of it. During this inventory search,

Officer Bissonnette found a black backpack in the passenger compartment, which contained multiple jars of a green leafy substance he believed to be marijuana.  He also found the camouflage bag in the trunk and a firearm inside that bag.

With respect to these facts, in an order allowing a motion in limine, the motion judge ruled that the "Commonwealth will be limited to testimony that the police were conducting an 'unrelated investigation' when the observations of the defendant were made by the police officer(s)."

Despite this order, in opening, the prosecutor stated that the police were surveilling the defendant's residence, looking for the defendant, and that they arrested him on a warrant.  The prosecutor said that the police were at the defendant's house for "unnamed reasons," not on an unrelated matter.

These references to additional suspicion of criminality by the defendant and to the existence of a warrant for his arrest on a different matter were obviously improper.  No evidence about any of these matters was anticipated, and the references served therefore only to indicate to the jury that the defendant was a person of criminal character.[2]  See Commonwealth v.

_____

[2] In his brief, the defendant argues that he was prejudiced by the prosecutor holding up the firearm that was found inside the defendant's backpack without seeking permission of the court.  The gun was admitted into evidence, and, while we need not rule definitively on the issue, the defendant has put

6

Crayton, 470 Mass. 228, 249 (2014) ("Evidence of a defendant's prior or subsequent bad acts is inadmissible for the purpose of demonstrating the defendant's bad character or propensity to commit the crimes charged").

The trial judge denied a motion for a mistrial after these comments. The next day, she attempted curative action. Although the defendant preserved his claim of error by noting he wanted a mistrial, the trial judge, having denied that, had the parties agree to a stipulation that "the police were outside the defendant's home on an unrelated investigation" and crafted a curative instruction, which said "[the jurors] should not draw any negative inferences against the defendant based on that fact." The stipulation was read to the jury, and the stipulation and accompanying instruction were also repeated at the end of trial. The trial judge instructed the jury that

---

forward no legal basis that this was improper, except the possibility, which seems serious to us, that it might have presented a safety issue. In any event, the defendant did not press this claim at argument.

Without objection, in his opening, the prosecutor also said that the officers "saw [the defendant] leave that house carrying this firearm that was inside a camouflage bag." Although we can see how this might have been read incorrectly to suggest that the officers knew the gun was in the backpack as the defendant left his residence, even assuming there is error, we do not think that it created a substantial risk of a miscarriage of justice. See Commonwealth v. Azar, 435 Mass. 675, 685, 687 (2002), S.C. 444 Mass. 72 (2005).

7

"opening and closing arguments of the lawyers are not a substitute for the evidence."

The defendant argues that denial of a mistrial was error and that the stipulation did not cure any prejudice from the statements in the prosecutor's opening.  We review a judge's decision to deny a motion for a mistrial for abuse of discretion and review the challenged statements in the prosecutor's opening for prejudicial error.  See Commonwealth v. Robinson, 493 Mass. 303, 317 (2024); Commonwealth v. Martinez, 476 Mass. 186, 197 (2017).  In the context of a motion for a mistrial based on misstatements in the prosecutor's opening, "[a] mistrial may be appropriate 'where the force of the prosecutor's opening remarks was overwhelmingly prejudicial and likely to leave an indelible imprint on the jurors' minds.'"  Commonwealth v. Hoilett, 430 Mass. 369, 372 (1999), quoting Commonwealth v. Fazio, 375 Mass. 451, 455 (1978).

The opening may have created an impression of the defendant's criminality.  And it is true that the jury heard all the first day's evidence without those assertions in the opening being corrected.  Likewise, it is true that although the stipulation addressed many of the statements, it did nothing to address the statement that the defendant had been arrested on a warrant.

8

Without implying that a late-given curative instruction, or one that addresses most, but not all, of the errors in an opening will always suffice to render such errors nonprejudicial, we conclude on all the facts and circumstances of this case, that, in the end, in light of the stipulation and instruction, the errors here were not prejudicial and did not require a mistrial.

Most of the erroneous statements in the opening were forcefully addressed, and the jury were given the standard instruction that opening and closing arguments of counsel are not evidence. The defendant was convicted of the firearms offenses, but was acquitted of the possession of a class D substance with intent to distribute count, based upon the discovery of roughly two ounces of marijuana in a different backpack in the car. We conclude that, rather than being overwhelmed by any sense of the defendant's criminality, as the split verdict shows, the jury paid attention to the evidence

and considered the differences in the Commonwealth's cases with respect to each count.

Judgments affirmed.

By the Court (Rubin, Neyman & Tan, JJ.[3]),

*Paul Little*

Clerk

Entered:  August 20, 2025.

---

[3] The panelists are listed in order of seniority.